**THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**
**Case No. 5:26-cv-00267**

G.S., a minor child,
by and through her parent and natural guardian,
Catherine Smith;

A.S., a minor child,
by and through his parent and natural guardian,
Catherine Smith;

C.S., a minor child,
by and through his parent and natural guardian,
Catherine Smith;

CATHERINE SMITH,
Individually and as the parent of G.S., A.S.,
and C.S.;

E.J.C.1, a minor child,
by and through her parents, Bethany Joyal-
Cousin and Matthew Cousin;

J.J.1, a minor child,
by and through his parents, Bethany Joyal-
Cousin;

J.J.C., a minor child,
by and through his parents, Bethany Joyal-
Cousin and Matthew Cousin;

J.J.2, a minor child,
by and through his parents, Bethany Joyal-
Cousin;

E.J.C.2, a minor child,
by and through her parents, Bethany Joyal-
Cousin and Matthew Cousin;

S.J.1, a minor child,
by and through his parent, Bethany Joyal-
Cousin;

**Plaintiffs Demand Trial By Jury**

1

S.J.2, a minor child,
by and through her parent, Bethany Joyal-
Cousin;

I.J., a minor child,
by and through his parent, Bethany Joyal-
Cousin;

J.C., a minor child,
by and through her parents, Bethany Joyal-
Cousin and Matthew Cousin;

BETHANY JOYAL-COUSIN,
Individually and as the parent of E.J.C.1, J.J.1,
J.J.C, J.J.2, E.J.C.2, S.J.1, S.J.2, I.J., and J.C.;

    and

MATTHEW COUSIN,
Individually and as the parent of E.J.C.1, J.J.C.,
E.J.C.2, J.C.

      Plaintiffs,

vs.

STARK COUNTY BOARD OF
   DEVELOPMENTAL DISABILITIES;

ASHLEY HAHE;

EDWARD LEWIS;

WILLIAM GREEN;

WAYNE COUNTY BOARD OF
   DEVELOPMENTAL DISABILITIES;

SARAH CARTER;

    and

DAVID ASHLEY

      Defendants.

## VERIFIED COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs G.S., A.S., and C.S., by and through their parent and natural guardian, Catherine Smith, individually and as the parent of G.S., A.S., and C.S. for their Complaint against the Stark County Board of Developmental Disabilities ("SCBDD"), Ashley Hahe, Edward Lewis, and William Green, state and aver upon information and belief as further set forth below.

Plaintiffs E.J.C.1, J.J.1, J.J.C., J.J.2, E.J.C.2, S.J.1, S.J.2, I.J., and J.C., by and through their parent, Bethany Joyal-Cousin, individually and as the parent., and Matthew Cousin, individually and as the parent of E.J.C.1, J.J.C., E.J.C.2, J.C. for their Complaint against Wayne County Board of Developmental Disabilities ("WCBDD"), Sarah Carter, and David Ashley, state and aver upon information and belief as follows:

## NATURE OF THE CASE

1.　　Plaintiffs bring this action to remedy violations by Defendants, of rights secured by the Constitution and laws of the United States, including 42 U.S.C. § 1983, the First, Fourth and Fourteenth Amendments, the Americans with Disabilities Act (ADA), Section 504 of the Rehabilitation Act, and the Fair Housing Act.

## JURISDICTION AND VENUE

2.　　This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because the action arises under federal law, and under 28 U.S.C. § 1343(a)(3) because Plaintiffs seek to redress the deprivation of constitutional and federal statutory rights under color of state law.

3.　　This Court has jurisdiction over Plaintiffs' claims for declaratory and injunctive relief under 28 U.S.C. §§ 2201–2202.

4.     All events giving rise to this action occurred in Stark County, Ohio, and Wayne County, Ohio, and all Defendants reside or are employed in this District.

5.     Venue is proper in the Northern District of Ohio under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to these claims occurred within this judicial district and Defendants reside here.

## PARTIES

**Plaintiff Catherine Smith's Family**

6.     Plaintiff G.S. is a qualified individual with disabilities under the ADA. She is a minor with profound disabilities. G.S. is the recipient of a Medicaid home and community-based waiver administered by SCBDD. She resides in Stark County, Ohio, with her family members.

7.     Plaintiffs A.S. and C.S. are siblings of G.S. and reside in the Smith family home.

8.     Plaintiff Catherine Smith is the mother and natural guardian of G.S. and her siblings.

9.     These Plaintiffs reside in Stark County, Ohio in the Smith family home.

10.    Catherine Smith is a Plaintiff in this action both individually and as the parent of Plaintiffs G.S., A.S., and C.S.

**Plaintiffs Joyal-Cousin's Family**

11.    Plaintiff Bethany Joyal-Cousin is a provider of Medicaid Home- and Community-Based Waiver Services. At the time of the incident described herein, she was providing residential respite services in her home to a recipient of a Medicaid waiver administered by WCBDD.  Also at the time of the incident, an additional WCBDD Medicaid waiver recipient lived in her home, her son who passed away in 2025.

12.    Plaintiffs E.J.C.1, J.J.1, J.J.C., J.J.2, E.J.C.2, S.J.1, S.J.2, I.J., and J.C. are the minor children of Bethany Joyal-Cousin. They all live in their family home in Wayne County, Ohio.

13.     Plaintiff Matthew Cousin is the husband of Plaintiff Bethany Joyal-Cousin and the father of E.J.C.1, J.J.1, J.J.C., J.J.2, E.J.C.2, S.J.1, S.J.2, I.J., and J.C. He lives with them in their family home in Wayne County, Ohio.

14.     Defendant Stark County Board of Developmental Disabilities ("SCBDD") is a county agency responsible for administering Medicaid HCBS waiver services. SCBDD is a political subdivision, a public entity under the ADA, and received federal funding under Section 504. SCBDD is a "person" under 42 U.S.C. § 1983.  At all relevant times, this Defendant acted under color of state law within the meaning of 42 U.S.C. § 1983.

15.     Defendant Ashley Hahe was the SCBDD Service and Support Administrator ("SSA"), responsible for G.S.'s person-centered service plan and was the person who conducted the unannounced home inspection at issue.  Ashley Hahe is a "person" under 42 U.S.C. § 1983.  At all relevant times, Defendants acted under color of state law within the meaning of 42 U.S.C. § 1983.

16.     Defendant Edward Lewis is the Director of Service and Support Administration at SCBDD. He supervises all service and support administrators (SSAs) He is a final policymaker as it pertains to the challenged matters set forth in this Complaint.  Edward Lewis is a "person" under 42 U.S.C. § 1983.  At all relevant times, he acted under color of state law within the meaning of 42 U.S.C. § 1983.  This Defendant is being sued in both his official and personal capacities.

17.     Defendant William Green is the Superintendent of SCBDD. He is responsible for agencywide policy and decisions regarding Medicaid services and supports.  He is a final policymaker as it pertains to the challenged matters set forth in this Complaint.  William Green is

a "person" under 42 U.S.C. § 1983.  At all relevant times, she acted under color of law and is a state actor.  This Defendant is being sued in both his official and personal capacities.

18.     Defendant Wayne County Board of Developmental Disabilities ("WCBDD") is a county agency responsible for administering Medicaid HCBS waiver services. WCBDD is a political subdivision, a public entity under the ADA, and received federal funding under Section 504. WCBDD is a "person" under 42 U.S.C. § 1983.  At all relevant times, this Defendant acted under color of state law within the meaning of 42 U.S.C. § 1983.

19.     Defendant Sarah Carter is the Director of Service and Support Administration at WCBDD. She supervises all service and support administrators (SSAs) She is a final policymaker as it pertains to the challenged matters set forth in this Complaint.  Sarah Carter is a "person" under 42 U.S.C. § 1983.  At all relevant times, she acted under color of state law within the meaning of 42 U.S.C. § 1983.  This Defendant is being sued in both her official and personal capacities.

20.     Defendant David Ashley is the Superintendent of WCBDD. He is responsible for agencywide policy and decisions regarding Medicaid services and supports.  He is a final policymaker as it pertains to the challenged matters set forth in this Complaint.  David Ashley is a "person" under 42 U.S.C. § 1983.  At all relevant times, he acted under color of law and is a state actor.  This Defendant is being sued in both his official and personal capacities.

## FACTS

**I.    Defendant SSA Hahe Conducted an Unannounced Home Inspection at the Smith Family Home**

21.    On August 27, 2024, Catherine Smith received an email from G.S.'s Stark County Board of Developmental Disabilities service and support administrator (SSA), Ashley Hahe, stating the following:

> Hi Catherine — Thank you for these.  As a note, I plan to stop by during a provider shift in the next week or so to shadow. That will help me articulate the support being provided to Gabby during these hours. Let me know if you have questions.

22.    On the afternoon of August 28, 2024, SSA Ashley Hahe arrived at the front door of the Smith home.

23.    The front door was open, with the storm door locked.

24.    Defendant Hahe rang the doorbell three times and knocked until Catherine answered the door.

25.    Catherine did not open the door, but instead spoke through the screen door.

26.    Catherine asked Defendant Hahe why she was here.

27.    Defendant Hahe responded that she was there for a monitoring visit of G.S. and her Medicaid waiver providers.

28.    At this time there was no Medicaid IO Waiver provider working in the Smith home.

29.    Defendant Hahe continued to state to Catherine that she is allowed to come monitor G.S. in the family home whenever she wants to.

30.    Catherine informed Defendant Hahe that G.S's waiver direct service professional ("DSP") was not scheduled at this time to provide services, but a family friend who also happens to be a part-time waiver provider was visiting the home (in her capacity as a friend) at the time.

31.     Defendant Hahe argued with Catherine, pulling up a schedule on her phone, that the DSP was supposed to be working at this time.

32.     Catherine informed Ashley Hahe that she had an outdated schedule.

33.     The provider agency that serves G.S. had emailed Ashley Hahe the correct schedule on July 9, 2024, but this is not the schedule Ashley Hahe pulled up on her phone.

34.     Defendant Hahe stated she still needed to come in and see G.S.

35.     At the time of Defendant Hahe's arrival, Catherine was working from home, and Tina White (family friend who was not "on the clock" as a Medicaid service provider at the time of the unannounced inspection) was doing Catherine a favor by helping with her three kids while Catherine worked.

36.     Catherine felt uncomfortable and pressured to let Defendant Hahe into her home unannounced, because she feared G.S.'s Medicaid waiver services would be affected if she were to refuse entry.

37.     When Defendant Hahe came into the Smith home, G.S., her brothers, Tina White, and Tina White's daughter were all sitting at the family's kitchen table, while Tina White prepared a meal for her own daughter.

38.     Defendant Hahe stood at the table with a notebook watching everyone, taking notes, and looking around.

39.     Defendant Hahe talked with Tina White and Catherine regarding the planning of G.S.'s service plan, including documents needed for the upcoming new waiver span.

40.     Defendant Hahe's unannounced search of the Smith family and home lasted for about 15 minutes.

41.     Catherine felt increasingly upset once Defendant Hahe left, and started crying with overwhelmed emotions.

42.     Catherine was worried Defendant Hahe was just trying to find something to report on to take G.S.'s services away, or worse, take G.S. away from her.

43.     Catherine knew Defendant Hahe was an Intermediate Care Facility/Guardianship Liaison for Stark County Board of Developmental Disabilities, and this made her concerns even more viable and realistic.

44.     Moreover, Defendant Hahe also lived in the Smith's neighborhood, in close proximity the Smith home.

45.     For the rest of the summer, the Smith family did not play outside in the front with because she was worried that Ashely Hahe was going to drive by and stop to "monitor" or "inspect" them—even if G.S. was not home or not receiving Medicaid services at the time.

46.     Since the unannounced inspection by Defendant Hahe, Catherine always keep the garage and front door shut.

47.     For months following the unannounced inspection, Catherine felt like a prisoner in her own home.

48.     Catherine still experiences anxiety that an unannounced inspection may happen again at any time.

49.     A government worker showed up at the Smith family home without warning, came inside, observed meals at the family table, and took notes about what the friends and family were doing.

50.     These notes were placed by the SSA into G.S.'s permanent case file.

51.     The Smiths was never given any notice whatsoever that as a condition of G.S. receiving Medicaid-funded waiver services in their home, everyone living in the household or present in the home at the time of the inspection would be required to consent to unannounced home inspections, even siblings and family friends.

## II.     WCBDD SSA Becky Migdal Attempted to Conduct an Unannounced Home Inspection at the Joyal-Cousin Family Home, But Was Physically Stopped by E.J.C.1.

52.     In February 2024, Plaintiff Bethany Joyal-Cousin and her husband Plaintiff Matthew Cousin provided residential respite care in their Wayne County home to C.D., an adult Individual Options Medicaid waiver recipient and an individual with severe developmental disabilities.

53.     During this period, while several members of the Joyal-Cousin family and C.D. were away from home on an outing, C.D.'s WCBDD SSA Becky Migdal and a guardian representative from Advocacy and Protective Services, Inc. (APSI), arrived unannounced at the Joyal-Cousin home.

54.     SSA Migdal, at all relevant times set forth herein, was a state actor and acted under color of state law.

55.     SSA Migdal and the other woman attempted to coerce a minor child, Plaintiff E.J.C.1, to allow them entry to inspect the home and C.D.'s room.

56.     Plaintiff E.J.C.1 had never seen or spoken to either woman before. To her, they were complete strangers who appeared unannounced and demanded access to the family's private home. Even after SSA Migdal and the other woman were informed by Plaintiff E.J.C.1 that her parents were not home, they persisted, asking to be let in and requesting that Plaintiff E.J.C.1 retrieve C.D. to speak with them, despite knowing that no adults were present.

57.     Plaintiff E.J.C.1 explained that C.D. was not home.

58.     Despite being refused entry multiple times, the APSI representative physically opened the screen door in an attempt to force entry.

59.     Plaintiff E.J.C.1 informed the women that no adults were home and that she could not allow the women to enter the home.

60.     SSA Migdal and the other woman eventually left, but the incident left Plaintiffs Bethany Joyal-Cousin, Matthew Cousin, and their children E.J.C.1, J.J.1, J.J.C., J.J.2, E.J.C.2, S.J.1., S.J.2, I.J., and J.C., shaken and upset.

61.     E.J.C.1 was particularly shaken, as the responsibility to defend the home against the intruders and uphold her parents' teachings not to allow strangers into the home fell to her.

62.     These Plaintiffs were horrified by the aggressive behavior of WCBDD SSA Migdal and the APSI representative.

63.     The entire Joyal-Cousin family was very upset by these actions of the government which were extremely intrusive, and particularly worrisome, and the minor daughter, a teenager, experienced the brunt of their attempt to force their way into our home.

64.     The parents Bethany and Matthew experienced significant horror and anger upon receiving the call from their child and realizing how close these women were to just opening the door and letting themselves into their home with minor children present and no parents at home.

65.     Plaintiffs Bethany Joyal-Cousin and Matthew Cousin were never given any notice whatsoever that as a condition of C.D. receiving Medicaid-funded waiver services in their home, everyone living in the household or present in the home at the time of the inspection would be required to consent to unannounced home inspections, even teen children home alone with no adults.

III.    **Facts Relating to First Amendment Retaliation Against the Joyal-Cousin Family**

66.     Bethany Joyal-Cousin, Matthew Cousin, and E.J.C.1 were Relators in *In re Smith v. DODD*, Ohio Supreme Court Case No. 2025-0216, a mandamus action challenging unlawful, unannounced home inspections conducted by county boards of developmental disabilities.

67.     Wayne County Board of Developmental Disabilities (WCBDD) was a named respondent in that case, and WCBDD SSA Becky Migdal was identified in the underlying mandamus affidavit for her role in attempting to enter the Joyal-Cousin family home while no adults were present.

68.     On February 21, 2025, after the mandamus action was filed, the Cousins arrived at WCBDD's office for their son's annual ISP meeting.  In the parking lot, Plaintiff Bethany Joyal-Cousin, who also runs a provider agency, approached SSA Migdal and mentioned that a guardian had inquired about her agency providing emergency respite for an individual on Migdal's caseload.

69.     Migdal responded angrily that she would not work with Joyal-Cousin, citing the lawsuit: "because of the lawsuit that you named me in." Migdal also accused Joyal-Cousin of "smearing [her] name in that filing." When Joyal-Cousin responded by pointing out Migdal's prior conduct (attempting to gain entry to her home by persuading her minor child to let her in while no adult was home) Migdal yelled, "I DID NOT!"

70.     Plaintiff Matthew Cousin witnessed the interaction and corroborated Migdal's refusal to work with Bethany Joyal-Cousin due to the lawsuit. He noted that Migdal became visibly upset and aggressive, and that Bethany Joyal-Cousin remained visibly shaken after the confrontation.

71.     Later that morning, as the family exited the building after the annual meeting, Migdal reappeared at the front door and slammed it shut in the faces of both Bethany and her son, who

uses a wheelchair. The locked, inaccessible door created an additional barrier for the family to exit the building.

72.     SSA Migdal's refusal to work with Joyal-Cousin, her angry statements referencing the pending lawsuit, and her interference with business activities constitute retaliatory conduct in violation of the First Amendment. The retaliation was directly tied to Joyal-Cousin's participation in a public court action and Joyal-Cousin's protected speech aimed at exposing unlawful government practices.

73.     On February 28, 2025, Plaintiff's counsel issued a formal letter to WCBDD's counsel informing them of the incident and describing Migdal's retaliatory behavior. WCBDD did not respond.

74.     By failing to address or remedy the retaliatory conduct, WCBDD ratified Migdal's actions and demonstrated deliberate indifference to the violation of Plaintiffs' First Amendment rights.

## FIRST CAUSE OF ACTION
### 42 U.S.C. § 1983
### Fourth Amendment
### Illegal Search

75.     Plaintiffs re-allege and incorporate all preceding paragraphs as if fully set forth herein.

76.     Defendants, acting under color of state law, trespassed upon Plaintiffs' constitutionally protected homes, in order to obtain information.

77.     The physical occupation by Defendants of Plaintiffs' private properties for the purposes of obtaining information, is a search within the meaning of the Fourth Amendment.

78.     Plaintiffs have a constitutionally protected reasonable expectation of privacy related to the inside of their homes and in the curtilage of their home.

79.     The entry into the curtilage of the Joyal-Cousin home was a search.

80.     The opening of the door and the attempt to forcibly enter through the door at the Joyal-Cousin home were searches.

81.     The entry into the curtilage and into the Smiths' home was a search.

82.     The searches of the Plaintiffs' homes were illegal.

83.     The searches of Plaintiffs and their homes were conducted without Plaintiffs' consent or prior knowledge.

84.     The searches of the Plaintiffs and their homes were conducted without a search warrant.

85.     These searches were not reasonable and did not meet any reasonable legislative or administrative standards.

86.     Plaintiffs had no knowledge that the SSAs were going to enter their property to search them and their home, and the others in the home.

87.     At no time prior to the searches were Plaintiffs afforded an opportunity to obtain precompliance review before a neutral decisionmaker.

88.     Plaintiffs were deprived of the opportunity to question the reasonableness of the searches prior to their implementation by Defendants.

89.     Furthermore, Plaintiffs were deprived of the opportunity to question the reasonableness of the searches after their implementation by Defendants.

90.     The unlawful, illegal, and warrantless actions of these Defendants' trespass undertaken to gather information as well as conducting surveillance is a policy, custom, and/or practice of Defendant County Boards.

91.     The policymakers, Edward Lewis and William Green (SCBDD) and Sarah Carter and David Ashley (WCBDD), created this policy or custom. and these policymakers are the individuals that are the policy and decision makers as it pertains to this policy or custom.

92.     WCBDD and SCBDD and its policymakers and decision makers failed to supervise and train its employees to not violate clearly established constitutional parameters as to entering the homes of disabled persons and their families.

93.     Defendant Boards maintained policies or customs that failed to train and supervise its employees in areas pertaining to searches on the properties, and homes of developmentally disabled persons receiving Medicaid benefits, and of their family and other occupants.

94.     Defendant Boards provide no training or inadequate training as to how to constitutionally comply with searches of developmentally disabled persons, their families, and other occupants in their homes.

95.     County Boards have inadequate supervision over its employees who are conducting these searches of developmentally disabled persons, their families, and other occupants in their homes.

96.     The failure to train and supervise its employees who are conducting these illegal searches is directly related to the injuries which have resulted.

97.     These County Boards have shown a pattern of similar constitutional violations by the untrained employees who are conducting this search.

98.     Additionally, the failure to train and supervise is glaringly obvious due to the acts of the SSA employees entering private property and forcing their way into the homes of disabled persons and their families, and other occupants.

99.     There is clearly an obvious potential for constitutional violations in these searches, and the consequence is highly predictable.

100.    Moreover, WCBDD and SCBDD and its policymakers and decision makers ratified the violative acts alleged herein by failing to both discipline the persons conducting the searches of the homes of disabled persons and their families and by failing to afford Plaintiffs with redress.

101.    Plaintiffs have experienced harm by the unconstitutional processes and procedures undertaken is a policy, custom, and/or practice of these Defendants.

102.    The Defendant Boards' official policy, and the decisions of its final policymakers enforcing that policy, are the moving force behind the constitutional violations at issue.

103.    The actions set forth herein are sufficient to impose damages and other relief pursuant to *Monell v. New York City Department of Social Services* and its progeny.

104.    The conduct of Defendants was reckless and undertaken with complete indifference and wanton disregard to the federal rights of Plaintiffs to be free from violations of the Fourth Amendment to the United States Constitution.

## SECOND CAUSE OF ACTION
**42 U.S.C. § 1983**
**Fourteenth Amendment**
**Procedural Due Process**

105.    Plaintiffs re-allege and incorporate all preceding paragraphs as if fully set forth herein.

106.    The Fourteenth Amendment prohibits any state actor from depriving a person of a protected liberty or property interest without due process of law.

107.    To state a procedural due process claim, a plaintiff must show: (1) a protected interest; (2) government deprivation of that interest; and (3) the absence of constitutionally adequate notice and a meaningful opportunity to be heard.

108.    Plaintiff G.S. and her mother have a protected interests in the continued receipt of the

Medicaid IO Waiver Benefits, and the protections afforded thereto such as the right to due

process for any adverse action affecting the Federal Benefits and accompanying services.

109.    Defendants deprived Plaintiffs of their protected interest.

110.    Defendants failed to provide even one iota of due process prior to the searches.

111.    Defendants have wholly deprived Plaintiffs of their rights under the Fourteenth

Amendment.

112.    Because Defendants acted under color of state law and because the procedural protections

at issue are mandatory and clearly established, their actions constitute a violation of 42 U.S.C. §

1983.

113.    This deprivation of due process as it pertains to searches conducted by Defendants upon

disabled persons and their families and other occupants, is a policy, custom, and/or practice of

Defendant County Boards.

114.    The unlawful, illegal, and warrantless actions of these Defendants' undertaken to gather

information as well as conducting surveillance, is a policy, custom, and/or practice of Defendant

County Boards.

115.    The policymakers, Edward Lewis and William Green (SCBDD) and Sarah Carter and

David Ashley (WCBDD), created this policy or custom. and these policymakers are the

individuals that are the policy and decision makers as it pertains to this policy or custom.

116.    WCBDD and SCBDD and its policymakers and decision makers failed to supervise and

train its employees to not violate clearly established constitutional parameters as to entering the

homes of disabled persons and their families.

117.    Defendant Boards maintained policies or customs that failed to train and supervise its employees in areas pertaining to searches on the properties, and homes of developmentally disabled persons receiving Medicaid benefits, and of their family and other occupants.

118.    Defendant Boards provide no training or inadequate training as to how to constitutionally comply with searches of developmentally disabled persons, their families, and other occupants in their homes.

119.    County Boards have inadequate supervision over its employees who are conducting these searches of developmentally disabled persons, their families, and other occupants in their homes.

120.    The failure to train and supervise its employees who are conducting these illegal searches is directly related to the injuries which have resulted.

121.    These County Boards have shown a pattern of similar constitutional violations by the untrained employees who are conducting this search.

122.    Additionally, the failure to train and supervise is glaringly obvious due to the acts of the SSA employees entering private property and forcing their way into the homes of disabled persons and their families, and other occupants.

123.    There is clearly an obvious potential for constitutional violations in these searches, and the consequence is highly predictable.

124.    Moreover, WCBDD and SCBDD and its policymakers and decision makers ratified the violative acts alleged herein by failing to both discipline the persons conducting the searches of the homes of disabled persons and their families and by failing to afford Plaintiffs with redress.

125.    Plaintiffs have experienced harm by the unconstitutional processes and procedures undertaken is a policy, custom, and/or practice of these Defendants.

126. The Defendant Boards' official policy, and the decisions of its final policymakers enforcing that policy, are the moving force behind the constitutional violations at issue.

127. The actions set forth herein are sufficient to impose damages and other relief pursuant to *Monell v. New York City Department of Social Services* and its progeny.

128. The conduct of Defendants was reckless and undertaken with complete indifference and wanton disregard to the federal rights of Plaintiffs to be free from violations of the Fourteenth Amendment to the United States Constitution.

### THIRD CAUSE OF ACTION
**42 U.S.C. § 1983**
**Fourteenth Amendment**
**Equal Protection Clause**

129. Plaintiffs re-allege and incorporate all preceding paragraphs as if fully set forth herein.

130. The Equal Protection Clause prohibits the government from intentionally treating an individual differently from others who are similarly situated without a rational basis for doing so.

131. Defendants discriminated against Plaintiffs on the basis of the disabilities of G.S. and C.D..

132. Defendants had no rational relationship between the disparity of treatment and some legitimate governmental purpose.

133. To state a claim under the Equal Protection Clause, a plaintiff must show: (1) she is similarly situated to others; (2) she was intentionally treated differently; and (3) there is no rational basis for the difference in treatment.

134. These procedural protections are mandatory, uniform, and apply equally to every Waiver recipient under OAC-5123-4-02 (F)(q)(ii)(a), the Medicaid Act, and the CMS-approved IO Waiver.

135.    Defendants intentionally treated G.S. differently from similarly situated waiver recipients by conducting an illegal unannounced inspection of her home.

136.    As a public entity administering Medicaid HCBS services, SCBDD must not exclude qualified individuals with disabilities from participation in, deny them the benefits of, or subject them to discrimination under any of its programs, services, or activities. 42 U.S.C. § 12132.

137.    Defendants have adopted and enforced an unannounced home inspection policy under which Medicaid waiver recipients must submit to searches of their property and home at any time, by any person who shows up, subjecting themselves and others who live in the home or are present to unlawful governmental intrusion.

138.    These policies discriminate by reason of disability because only individuals who, due to having disabilities, require Medicaid waivers to remain living in their homes and communities instead of in institutions are subject to these home intrusions.

139.    Moreover, residents without disabilities are not subject to the unannounced home inspections by the government.

140.    Defendants' actions threaten Plaintiffs' ability to enjoy their homes, and impose conditions not imposed on nondisabled individuals and their household members.

141.    Defendants acted under color of state law, and their refusal to provide G.S. the same procedural protections afforded to similarly situated waiver recipients violates the Equal Protection Clause and is actionable under 42 U.S.C. § 1983.

142.    This disparate and discriminatory treatment targeting vulnerable disabled persons and their families and other occupants, is a policy, custom, and/or practice of Defendant County Boards.

143.    The unlawful, illegal, and warrantless actions of these Defendants' undertaken to gather information as well as conducting surveillance, is a policy, custom, and/or practice of Defendant County Boards.

144.    The policymakers, Edward Lewis and William Green (SCBDD) and Sarah Carter and David Ashley (WCBDD), created this policy or custom. and these policymakers are the individuals that are the policy and decision makers as it pertains to this policy or custom.

145.    WCBDD and SCBDD and its policymakers and decision makers failed to supervise and train its employees to not violate clearly established constitutional parameters as to entering the homes of disabled persons and their families.

146.    Defendant Boards maintained policies or customs that failed to train and supervise its employees in areas pertaining to searches on the properties, and homes of developmentally disabled persons receiving Medicaid benefits, and of their family and other occupants.

147.    Defendant Boards provide no training or inadequate training as to how to constitutionally comply with searches of developmentally disabled persons, their families, and other occupants in their homes.

148.    County Boards have inadequate supervision over its employees who are conducting these searches of developmentally disabled persons, their families, and other occupants in their homes.

149.    The failure to train and supervise its employees who are conducting these illegal searches is directly related to the injuries which have resulted.

150.    These County Boards have shown a pattern of similar constitutional violations by the untrained employees who are conducting this search.

151.    Additionally, the failure to train and supervise is glaringly obvious due to the acts of the SSA employees entering private property and forcing their way into the homes of disabled persons and their families, and other occupants.

152.    There is clearly an obvious potential for constitutional violations in these searches, and the consequence is highly predictable.

153.    Moreover, WCBDD and SCBDD and its policymakers and decision makers ratified the violative acts alleged herein by failing to both discipline the persons conducting the searches of the homes of disabled persons and their families and by failing to afford Plaintiffs with redress.

154.    Plaintiffs have experienced harm by the unconstitutional processes and procedures undertaken is a policy, custom, and/or practice of these Defendants.

155.    The Defendant Boards' official policy, and the decisions of its final policymakers enforcing that policy, are the moving force behind the constitutional violations at issue.

156.    The actions set forth herein are sufficient to impose damages and other relief pursuant to *Monell v. New York City Department of Social Services* and its progeny.

157.    The conduct of Defendants was reckless and undertaken with complete indifference and wanton disregard to the federal rights of Plaintiffs to be free from violations of the Fourteenth Amendment to the United States Constitution.

**FOURTH CAUSE OF ACTION**
**42 U.S.C. § 1983**
**Fourteenth Amendment**
**Parental Liberty Interest**
**On Behalf of Plaintiffs Bethany Joyal-Cousin and Matthew Joyal**
**Against the WCBDD Defendants**

158.    Plaintiffs re-allege and incorporate all preceding paragraphs as if fully set forth herein.

159.    To state a claim for violation of the Fourteenth Amendment parental liberty interest under § 1983, a plaintiff must show: (1) They are fit parents with a fundamental right to make decisions concerning the care, custody, control, and upbringing of their child; (2) The government intentionally interfered with or usurped that right; (3) The interference was not justified by a compelling governmental interest, or was not narrowly tailored to achieve any legitimate interest; (4) The deprivation occurred under color of state law.

160.    Plaintiffs Bethany Joyal-Cousin and Matthew Cousin are fit, loving parents of E.J.C.1. The fundamental liberty interest of parents to direct the care, custody, and control of their children has been repeatedly affirmed by the Supreme Court for more than a century.

161.    This constitutional right includes the authority to decide who may enter the family home, safety procedures for minors who are home alone, and how a child should react when a stranger shows up unannounced at the front door of the family home.

162.    Parental liberty right is clearly established and enforceable under 42 U.S.C. § 1983.

163.    WCBDD SSA Migdal, acting under color of state law, showed up unannounced when the adults of the Joyal-Cousin home were not home and teen daughter E.J.C.1 was in charge of the home and her siblings.

164.    SSA Migdal demanded entry to the home, even though E.J.C.1 repeatedly told her that her parents do not allow her to admit strangers who show up unannounced.

165.    No compelling governmental interest justifies overriding the decisions of fit parents regarding home safety and stranger-danger.

166.    SSA Migdal's attempt to convince a minor child to allow her to enter a private family home when there were no adults present substantially interfered with Plaintiffs' ability to protect

their children's privacy and physical safety. These actions violate their fundamental parental liberty interest and are actionable under 42 U.S.C. § 1983.

167. This underhanded evisceration of parental rights involving vulnerable disabled persons and their families, is a policy, custom, and/or practice of Defendant County Boards.

168. The unlawful, illegal, and warrantless actions of these Defendants' undertaken to gather information as well as conducting surveillance, is a policy, custom, and/or practice of Defendant County Boards.

169. The policymakers, Sarah Carter and David Ashley (WCBDD), created this policy or custom and these policymakers are the individuals that are the policy and decision makers as it pertains to this policy or custom.

170. WCBDD and its policymakers and decision makers failed to supervise and train its employees to not violate clearly established constitutional parameters as to entering the homes of disabled persons and their families.

171. Defendant WCBDD  maintained policies or customs that failed to train and supervise its employees in areas pertaining to searches on the properties, and homes of developmentally disabled persons receiving Medicaid benefits, and of their family and other occupants.

172. WCBDD provided no training or inadequate training as to how to constitutionally comply with searches of developmentally disabled persons, their families, and other occupants in their homes.

173. WCBDD rendered inadequate supervision over its employees who are conducting these searches of developmentally disabled persons, their families, and other occupants in their homes.

174. The failure to train and supervise its employees who are conducting these illegal searches is directly related to the injuries which have resulted.

24

175.    WCBDD has shown a pattern of similar constitutional violations by the untrained employees who are conducting this search.

176.    Additionally, the failure to train and supervise is glaringly obvious due to the acts of the SSA employees entering private property and forcing their way into the homes of disabled persons and their families, and other occupants.

177.    There is clearly an obvious potential for constitutional violations in these searches, and the consequence is highly predictable.

178.    Moreover, WCBDD and its policymakers and decision makers ratified the violative acts alleged herein by failing to both discipline the persons conducting the searches of the homes of disabled persons and their families and by failing to afford Plaintiffs with redress.

179.    Plaintiffs have experienced harm by the unconstitutional processes and procedures undertaken is a policy, custom, and/or practice of these Defendants.

180.    WCBDD's official policy, and the decisions of its final policymakers enforcing that policy, are the moving force behind the constitutional violations at issue.

181.    The actions set forth herein are sufficient to impose damages and other relief pursuant to *Monell v. New York City Department of Social Services* and its progeny.

182.    The conduct of Defendants was reckless and undertaken with complete indifference and wanton disregard to the federal rights of Plaintiffs to be free from violations of the Fourteenth Amendment to the United States Constitution.

## FIFTH CAUSE OF ACTION
**42 U.S.C. § 1983**
**Fourteenth Amendment**
**Unconstitutional-Conditions Doctrine**

183.    Plaintiffs re-allege and incorporate all preceding paragraphs as if fully rewritten herein.

184.    In this case, under the unconstitutional-conditions doctrine the government has violated both the Fourth and Fourteenth Amendments.

185.    Plaintiff G.S. is a Medicaid Home and Community-Based Services (HCBS) waiver recipient whose Medicaid services are medically necessary for her to remain safely in the home and avoid institutionalization.

186.    C.D. at all relevant times, was a Medicaid Home and Community-Based Services (HCBS) waiver recipient whose Medicaid services were medically necessary for him to remain safely in the home and avoid institutionalization.

187.    Defendants conditioned the receipt of Medicaid IO Waiver funds and services on the surrender of the constitutional right to be free from unreasonable searches by the government.

188.    Defendants also conditioned the receipt of G.S.'s and C.D.'s Medicaid IO Waiver funds and services on the surrender of the constitutional right to have a hearing before a neutral arbitrator prior to the trespass into the Smith's property and home.

189.    Defendants had no lawful basis to conduct the searches.

190.    Defendants have adopted and enforced an unannounced home inspection policy that conditioned G.S.'s continued access to Medicaid HCBS services on the surrender of her constitutional rights to be free from illegal searches by the government, *inter alia*.

191.    Defendants forced Plaintiffs into an unconstitutional choice.

192.    The entire household must submit to unannounced home inspections at any time, even when no Medicaid waiver services are being provided, thereby surrendering their Fourth and Fourteenth Amendments rights, or risk losing Medicaid services that are essential to G.S.'s and C.D.'s survival, safety, and ability to remain at home.

193.    Conditioning Medicaid HCBS services on giving up the right to be free from illegal searches is coercive, unconstitutional, and forbidden by the unconstitutional-conditions doctrine.

194.    Defendants lack any legitimate governmental interest, let alone a compelling one, that could justify conditioning a profoundly disabled person's medically necessary care on the surrender of constitutional protections.

195.    This threat of withholding Federal Medicaid Benefit in order to gain entry onto the property and into the homes of developmentally disabled persons and their families. and other occupants, is a policy, custom, and/or practice of Defendant County Boards.

196.    The unlawful, illegal, and warrantless actions of these Defendants' undertaken to gather information as well as conducting surveillance, is a policy, custom, and/or practice of Defendant County Boards.

197.    The policymakers, Edward Lewis and William Green (SCBDD) and Sarah Carter and David Ashley (WCBDD), created this policy or custom. and these policymakers are the individuals that are the policy and decision makers as it pertains to this policy or custom.

198.    WCBDD and SCBDD and its policymakers and decision makers failed to supervise and train its employees to not violate clearly established constitutional parameters as to entering the homes of disabled persons and their families.

199.    Defendant Boards maintained policies or customs that failed to train and supervise its employees in areas pertaining to searches on the properties, and homes of developmentally disabled persons receiving Medicaid benefits, and of their family and other occupants.

200.    Defendant Boards provide no training or inadequate training as to how to constitutionally comply with searches of developmentally disabled persons, their families, and other occupants in their homes.

201.    County Boards have inadequate supervision over its employees who are conducting these searches of developmentally disabled persons, their families, and other occupants in their homes.

202.    The failure to train and supervise its employees who are conducting these illegal searches is directly related to the injuries which have resulted.

203.    These County Boards have shown a pattern of similar constitutional violations by the untrained employees who are conducting this search.

204.    Additionally, the failure to train and supervise is glaringly obvious due to the acts of the SSA employees entering private property and forcing their way into the homes of disabled persons and their families, and other occupants.

205.    There is clearly an obvious potential for constitutional violations in these searches, and the consequence is highly predictable.

206.    Moreover, WCBDD and SCBDD and its policymakers and decision makers ratified the violative acts alleged herein by failing to both discipline the persons conducting the searches of the homes of disabled persons and their families and by failing to afford Plaintiffs with redress.

207.    Plaintiffs have experienced harm by the unconstitutional processes and procedures undertaken is a policy, custom, and/or practice of these Defendants.

208.    The Defendant Boards' official policy, and the decisions of its final policymakers enforcing that policy, are the moving force behind the constitutional violations at issue.

209.    he actions set forth herein are sufficient to impose damages and other relief pursuant to *Monell v. New York City Department of Social Services* and its progeny.

210.    The conduct of Defendants was reckless and undertaken with complete indifference and wanton disregard to the federal rights of Plaintiffs to be free from violations of the Fourteenth Amendment to the United States Constitution.

**SIXTH AND SEVENTH CAUSES OF ACTION**
**42 U.S.C. § 1983**
**Fourteenth Amendment**
**Substantive Due Process**

211.     Plaintiffs re-allege and incorporate all preceding paragraphs as if fully set forth herein.

212.     Defendants violated Plaintiffs' Fourteenth Amendment substantive due process rights.

213.     All Plaintiffs have a clearly established liberty interest in personal security and privacy in their homes. Courts have repeatedly recognized these interests as fundamental.

214.     In the Joyal-Cousin case, the Defendants' employee attempted to force their way into the home, with no adults present, and attempted to convince a minor child to let government officials conduct a search of the inside of their home.

215.     In the Smiths' case, Defendants performed an unannounced home inspection when no Medicaid waiver services were being provided, taking notes on the family and their visitors.

216.     Defendants' actions in the Joyal-Cousin home constitute affirmative conduct that creates or increases a known, specific, and immediate danger to E.J.C.1, satisfying the state-created danger doctrine.

217.     Defendants' conduct is arbitrary, conscience-shocking, and oppressive, because it:

- Seeks to teach minor children to allow strangers who show up unannounced to enter the family home

- Teaches children to accept government surveillance as normal, normalizing the presence of government agents in private spaces without consent or judicial oversight, fostering learned helplessness and eroding the foundational American value of the home as a protected sanctuary.

- Seeks to surveil Medicaid waiver recipients at any time of their day, even when they are not receiving any Medicaid waiver services, completely destroying any sense of privacy

- Targets the most vulnerable populations with government intrusion, exploiting the vulnerability of disabled children and adults on Medicaid waivers by conditioning their access to essential care on surrendering fundamental privacy rights, knowing they have no realistic alternative but to comply.

- Circumvents judicial oversight in favor of bureaucratic discretion, replacing the neutral judgment of a court (required for search warrants) with the unchecked opinions of low-level county employees, thereby eliminating a crucial safeguard against abuse. In other words, citizens who are suspected of committing actual crimes have more right to privacy in their homes than people with developmental disabilities.

- Degrades human dignity and family integrity, treating people with developmental disabilities receiving Medicaid HCBS services as inherently suspect, subjecting them to treatment more commonly reserved for criminal investigations, thereby stigmatizing and traumatizing a marginalized population.

218.    No legitimate governmental interest justifies Defendants' actions.

219.    Defendants' conduct violates Plaintiffs' substantive due process rights under the Fourteenth Amendment and is actionable under 42 U.S.C. § 1983.

220.    The unlawful, illegal, and warrantless actions of these Defendants' undertaken to gather information as well as conducting surveillance, is a policy, custom, and/or practice of Defendant County Boards.

221.    The policymakers, Edward Lewis and William Green (SCBDD) and Sarah Carter and David Ashley (WCBDD), created this policy or custom. and these policymakers are the individuals that are the policy and decision makers as it pertains to this policy or custom.

222.    WCBDD and SCBDD and its policymakers and decision makers failed to supervise and train its employees to not violate clearly established constitutional parameters as to entering the homes of disabled persons and their families.

223.    Defendant Boards maintained policies or customs that failed to train and supervise its employees in areas pertaining to searches on the properties, and homes of developmentally disabled persons receiving Medicaid benefits, and of their family and other occupants.

224.    Defendant Boards provide no training or inadequate training as to how to constitutionally comply with searches of developmentally disabled persons, their families, and other occupants in their homes.

225.    County Boards have inadequate supervision over its employees who are conducting these searches of developmentally disabled persons, their families, and other occupants in their homes.

226.    The failure to train and supervise its employees who are conducting these illegal searches is directly related to the injuries which have resulted.

227.    These County Boards have shown a pattern of similar constitutional violations by the untrained employees who are conducting this search.

228.    Additionally, the failure to train and supervise is glaringly obvious due to the acts of the SSA employees entering private property and forcing their way into the homes of disabled persons and their families, and other occupants.

229.    There is clearly an obvious potential for constitutional violations in these searches, and the consequence is highly predictable.

31

230.    Moreover, WCBDD and SCBDD and its policymakers and decision makers ratified the violative acts alleged herein by failing to both discipline the persons conducting the searches of the homes of disabled persons and their families and by failing to afford Plaintiffs with redress.

231.    Plaintiffs have experienced harm by the unconstitutional processes and procedures undertaken is a policy, custom, and/or practice of these Defendants.

232.    The Defendant Boards' official policy, and the decisions of its final policymakers enforcing that policy, are the moving force behind the constitutional violations at issue.

233.    The actions set forth herein are sufficient to impose damages and other relief pursuant to *Monell v. New York City Department of Social Services* and its progeny.

234.    The conduct of Defendants was reckless and undertaken with complete indifference and wanton disregard to the federal rights of Plaintiffs to be free from violations of the Fourteenth Amendment to the United States Constitution.

**EIGHTH CAUSE OF ACTION**
**42 U.S.C. § 12132**
**Americans with Disabilities Act Title II - 42 U.S.C. § 12132**
**Section 504 of the Rehabilitation Act - 29 U.S.C. § 794**
**Disability Discrimination**

235.    Plaintiffs incorporate all preceding paragraphs as if fully set forth herein.

236.    To establish a Title II ADA claim, a plaintiff must show she is a qualified individual with a disability; she was excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against; and the exclusion, denial, or discrimination occurred by reason of disability.

237.    To state a claim under Section 504, a plaintiff must show: (1) She is a person with a disability; (2) She is otherwise qualified to participate in the program; (3) The program or activity receives federal financial assistance; (4) She was excluded from participation in, denied

benefits of, or subjected to discrimination; (5) The exclusion or discrimination occurred solely by reason of disability.

238.    Plaintiff G.S. is a qualified individual with a disability under the ADA and §504. She has profound developmental disabilities and is eligible for and receives Medicaid HCBS services under Ohio's Individual Options Waiver.

239.    C.D. was, at all relevant times, a qualified individual with a disability under the ADA and §504. He has profound developmental disabilities and is eligible for and receives Medicaid HCBS services under Ohio's Individual Options Waiver.

240.    Defendant SCBDD is a public entity subject to Title II of the ADA.

241.    Defendant SCBDD is also subject to Section 504 because it administers Medicaid waiver services funded in part by federal financial assistance flowing from the United States Department of Health and Human Services through the Ohio Department of Medicaid. SCBDD's HCBS activities therefore constitute programs or activities receiving Federal financial assistance.

242.    As a public entity administering Medicaid HCBS services, SCBDD must not exclude qualified individuals with disabilities from participation in, deny them the benefits of, or subject them to discrimination under any of its programs, services, or activities. 42 U.S.C. § 12132.

243.    Defendants have adopted and enforced an unannounced home inspection policy under which Medicaid waiver recipients must submit to searches of their property and home at any time, by any person who shows up, subjecting themselves and others who live in the home or are present to unlawful governmental intrusion.

244.    These policies discriminate by reason of disability because only individuals who, due to having disabilities, require Medicaid waivers to remain living in their homes and communities instead of in institutions are subject to these home intrusions.

245.     Moreover, Stark County residents without disabilities are not subject to the unannounced home inspections by the government.

246.     Defendants' actions threaten Plaintiffs' ability to enjoy their homes, and impose conditions not imposed on nondisabled individuals and their household members.

### NINTH CAUSE OF ACTION
### 42 U.S.C. §§ 3601–3619
### Fair Housing Act
### Disability Discrimination

247.     Plaintiffs incorporate all preceding paragraphs as though fully rewritten herein.

248.     The Fair Housing Act ("FHA") prohibits discrimination in housing based on disability.

249.     To state a claim under 42 U.S.C. § 3604(f), a plaintiff must show: (1) she is a person with a disability under § 3602(h); (2) she resides in or seeks to reside in a "dwelling" under § 3602(b); (3) the defendant made housing "unavailable," or imposed discriminatory terms, conditions, or privileges of housing because of disability; (4) the discrimination was intentional, had a disparate impact, or involved denial of reasonable accommodation.

250.     Plaintiff G.S and C.D. are people with qualifying disabilities under § 3602(h).

251.     At all relevant times, Plaintiff G.S. and C.D. each resided in a dwelling.

252.     Defendants made the housing unavailable by forcing an illegal search upon Plaintiffs because of G.S. and C.D.'s disability.

253.     Defendants coerced, threatened and interfered with Plaintiffs' rights to live in their home without unwarranted and illegal governmental searches.

254.     42 U.S.C. § 3615 provides that any state or local law, ordinance, regulation, policy, or administrative practice that "purports to require or permit any action that would be a discriminatory housing practice under this subchapter shall to that extent be invalid."

255. This includes policies adopted by state agencies, county boards, or political subdivisions.

256. Defendants have adopted a policy whereby they enter into the private homes of Medicaid Waier recipients, whenever they want, without a warrant, and without any legal basis whatsoever.

257. The unlawful entries into the protected and private lives and property of Plaintiffs by Defendants in order to monitor a disabled person's home is a discriminatory housing practice.

258. These actions significantly interfere with Plaintiffs' right to remain in, use, or enjoy their home.

259. Defendants have undermined the housing rights of Plaintiffs, and the challenged policy is expressly preempted and rendered invalid under 42 U.S.C. § 3615.

## TENTH AND ELEVENTH CAUSES OF ACTION
### 42 U.S.C. § 1983
### First Amendment Retaliation
### On Behalf of Plaintiffs Joyal-Cousin, Matthew Cousin, and E.J.C.1

260. Plaintiff Bethany Joyal-Cousin realleges and incorporates by reference all prior paragraphs of this Complaint as if fully set forth herein,

261. At all relevant times, Plaintiff Joyal-Cousin was engaged in constitutionally protected activity under the First Amendment to the United States Constitution, including but not limited to serving as a relator in *State ex rel. Smith v. DODD*, a mandamus action filed in the Supreme Court of Ohio challenging the constitutionality of unannounced home searches.

262. On or about February 21, 2025, while acting under color of state law and in the course of her employment for Defendant WCBDD, SSA Becky Migdal confronted Plaintiff Joyal-Cousin in a publicly hostile and intimidating manner, referencing the pending litigation.

263. During this encounter, SSA Migdal also slammed a door in Plaintiff Joyal-Cousin and her son's faces and refused to coordinate needed Medicaid waiver services between Plaintiff Joyal-

Cousin and her prospective client.

264.    SSA Migdal's actions were clearly motivated by Plaintiff's constitutionally protected activity and were intended to chill and punish her for engaging in legal advocacy and public criticism of county officials.

265.    On February 28, 2025, Plaintiff's counsel issued a formal letter to WCBDD's counsel informing them of the incident and describing Migdal's retaliatory behavior. Despite this formal notice, WCBDD took no meaningful disciplinary or corrective action.

266.    By failing to address or remedy the retaliatory conduct, WCBDD ratified Migdal's actions and demonstrated deliberate indifference to the violation of Plaintiff's First Amendment rights.

267.    Defendant WCBDD's conduct, including its ratification of retaliation by its employee and its own failure to intervene, was arbitrary, conscience-shocking, and undertaken with callous disregard for Plaintiff's constitutional rights.

268.    As a direct and proximate result of Defendant WCBDD's unconstitutional conduct, Plaintiff Joyal-Cousin suffered emotional distress, reputational harm, loss of access to critical Medicaid waiver supports for her child, and a chilling of her First Amendment rights.

269.    Defendants' conduct would deter a person of ordinary firmness from engaging in further protected speech or legal action. The retaliatory conduct caused Plaintiff emotional distress and chilled her advocacy.

270.    Defendant WCBDD is liable under 42 U.S.C. §1983 for retaliating against Plaintiff for the exercise of her constitutional rights to petition the court for redress under the First Amendment.

271.    Defendants have a policy of failing to supervise, train, and discipline its employees who

conduct illegal searches of disabled persons, their families, and other occupants in the home, and illegal searches of their property.

272.     The policymakers, Sarah Carter and David Ashley (WCBDD), created this policy or custom and these policymakers are the individuals that are the policy and decision makers as it pertains to this policy or custom.

273.     WCBDD and its policymakers and decision makers failed to supervise and train its employees to not violate clearly established constitutional parameters as to entering the homes of disabled persons and their families.

274.     Defendant Boards maintained policies or customs that failed to train and supervise its employees in areas pertaining to searches on the properties, and homes of developmentally disabled persons receiving Medicaid benefits, and of their family and other occupants.

275.     Defendant Boards provide no training or inadequate training as to how to constitutionally comply with searches of developmentally disabled persons, their families, and other occupants in their homes.

276.     County Boards have inadequate supervision over its employees who are conducting these searches of developmentally disabled persons, their families, and other occupants in their homes.

277.     The failure to train and supervise its employees who are conducting these illegal searches is directly related to the injuries which have resulted.

278.     These County Boards have shown a pattern of similar constitutional violations by the untrained employees who are conducting this search.

279.     Additionally, the failure to train and supervise is glaringly obvious due to the acts of the SSA employees entering private property and forcing their way into the homes of disabled persons and their families, and other occupants.

280.    There is clearly an obvious potential for constitutional violations in these searches, and the consequence is highly predictable.

281.    Moreover, WCBDD and its policymakers and decision makers ratified the violative acts alleged herein by failing to both discipline the persons conducting the searches of the homes of disabled persons and their families and by failing to afford Plaintiffs with redress.

282.    Plaintiffs have experienced harm by the unconstitutional processes and procedures undertaken is a policy, custom, and/or practice of these Defendants.

283.    The Defendant Boards' official policy, and the decisions of its final policymakers enforcing that policy, are the moving force behind the constitutional violations at issue.

284.    The actions set forth herein are sufficient to impose damages and other relief pursuant to *Monell v. New York City Department of Social Services* and its progeny.

285.    The conduct of Defendants was reckless and undertaken with complete indifference and wanton disregard to the federal rights of Plaintiffs to be free from violations of the First Amendment to the United States Constitution.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

A.  Enter an order, pursuant to the Declaratory Judgment Act, declaring the conduct of Defendants as being unconstitutional;

B.  Enter an order for injunctive relief to prevent Defendants from conducting any further illegal searches.

C.  Enter an order that Defendants have violated Plaintiffs' constitutional rights as set forth in the Causes of Action .

D.  Enter an order for damages (including compensatory, economic, non-economic and/or nominal) under 42 U.S.C. § 1983 against the Defendants;

E.  Enter an order for an award of actual/reasonable attorney fees, litigation expenses, and court costs pursuant to 42 U.S.C. § 1988, , and all other applicable laws, rules, or statutes; and

F.  Enter an order for all such other relief the Court deems equitable.


**JURY DEMAND**

For all triable issues, a jury is hereby demanded.

Respectfully Submitted,

*/s/ Michela Huth*
MICHELA HUTH
(Reg. No. 0091353)
257 Canal Street, SE
Bolivar, OH 44612
Ph:  330-440-4027
michelahuth.esq@gmail.com

*/s/ Richard Rosenthal*
RICHARD BRUCE ROSENTHAL
545 E. Jericho Turnpike
Huntington Station, NY 11746
(631) 629-8111 (telephone)
(631) 961-8789 (facsimile)
richard@thedoglawyer.com

**VERIFICATION OF COMPLAINT**
**PURSUANT TO U.S.C. § 1746**

I verify under penalty of perjury that the foregoing is true and accurate.

Executed on January 1, 2026

_____
Catherine Smith

31

## VERIFICATION OF COMPLAINT
## PURSUANT TO U.S.C. § 1746

I verify under penalty of perjury that the foregoing is true and accurate.

Executed on January 1, 2026

_Bethany A Joyal-Cousin_
Bethany Joyal-Cousin

**VERIFICATION OF COMPLAINT
PURSUANT TO U.S.C. § 1746**

I verify under penalty of perjury that the foregoing is true and accurate.

Executed on January 1, 2026

Mathew Cousin